J-S38036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| YAHSIER HILL | : | |
| | : | |
| Appellant | : | No. 402 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 18, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006767-2021

BEFORE:   STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED NOVEMBER 20, 2024**

Appellant, Yahsier Hill, appeals from the judgment of sentence imposed after the Court of Common Pleas of Philadelphia County revoked his parole. After careful consideration, we affirm.

On June 19, 2021, Appellant was arrested for Robbery—Threat of Immediate Serious Bodily Injury,[1] Firearms Not to be Carried Without a License,[2] Carry Firearms Public in Philadelphia,[3] Criminal Attempt—Theft By Unlawful Taking,[4] Possession of an Instrument of Crime with Intent,[5]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 903(a).
[2] 18 Pa.C.S.A. § 6106.
[3] 18 Pa.C.S.A. § 6108.
[4] 18 Pa.C.S.A. § 3921.
[5] 18 Pa.C.S.A. § 907(a).

Terroristic Threats with Intent to Terrorize Another,[6] Simple Assault[7] and Recklessly Endangering Another Person[8] for wielding a handgun that was fired inadvertently during a fight with two men.  He entered a negotiated guilty plea to carrying a firearm in public in Philadelphia, for which he was sentenced to one year of reporting probation on January 27, 2022.  **See** Sentencing Order, 1/27/22.

Just two weeks later, police arrested Appellant on VUFA and drug charges.  On May 31, 2022, the lower court conducted a Violation of Probation (VOP) hearing and, finding him in direct violation of his probation, revoked probation and resentenced him to 11 ½ to 23 months' incarceration.  **See** VOP Order I, 7/15/22.[9]

On September 27, 2023, four months after the lower court had granted his early parole petition to participate in a 90-day horticulture program under the supervision of a vocational training case manager,[10] Appellant was arrested by officers of the Philadelphia Police Department who, responding to a store alarm activated at approximately 1:00 a.m. during a period of civil

---

[6] 18 Pa.C.S.A. § 2706(a)(1).
[7] 18 Pa.C.S.A. § 2701(a)(3).
[8] 18 Pa.C.S.A. § 2705.

[9] The VOP court order of July 15, 2022, amended the previous order of May 31, 2022, which erroneously imposed a sentence including back time.

[10] At Appellant's VOP hearing of January 18, 2024, the lower court acknowledged that Appellant never attended the program, which itself amounted to a violation of the terms of his parole.  N.T., 1/18/24, at 50.

unrest and looting of businesses in the area, witnessed several males and Appellant running from a tobacco convenience store each carrying multiple items. N.T., 1/18/24, at 8.[11] At Appellant's subsequent *Gagnon II*[12] hearing, Officer Herrmann testified that the items recovered from Appellant were confirmed by the store owner as being part of the inventory taken from her store that morning. N.T. at 8-9. Although the criminal charges of theft, burglary, receiving stolen property, and conspiracy had been dropped, the lower court determined that evidence supplied by the arresting officer and the store owner at the *Gagnon II* hearing proved by a preponderance of the evidence that Appellant was in technical violation of parole. Accordingly, the

_____

[11] Appellant was about two store fronts down the street—about 40 to 50 feet—from the tobacco store when the arresting officer, Officer Timothy Herrmann, first saw him running away from it. N.T. at 10. When stopped by police, Appellant was carrying three new and sealed cigarette packs, one cigar, 10 packets of alleged marijuana – labeled "gelato" in sealed packages; 29 empty packets of the same packaging; 3 marijuana vape pens; and $144.50 United States currency. N.T. at 6-10.

[12] In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Supreme Court determined a two-step procedure was required before parole or probation may be revoked:

> [A] parolee [or probationer] is entitled to two hearings, one a preliminary hearing [*Gagnon I*] at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole [or probation], and the other a somewhat more comprehensive hearing [*Gagnon II*] prior to the making of a final revocation decision.

*Id.* at 781-82.

court revoked Appellant's parole and sentenced him to the balance of back time for his original firearm violation. This timely appeal followed.

Appellant raises the following issue for this Court's consideration:

Whether the lower court erred as a matter of law in finding that the [Appellant] technically violated the terms of his parole, by judgment of revocation of parole of January 18, 2024, in CP-51-CR0006767-2021, thereby recommitting him to serve the balance of his original sentence of July 15, 2022, since parole remains a viable means of rehabilitation and deterring future antisocial conduct?

Brief of Appellant, at 7.

In reviewing a challenge to a revocation of parole, this Court has consistently stated:

[T]here is no authority for a parole-revocation court to impose a new penalty. Rather, the only option for a court that decides to revoke parole is to recommit the defendant to serve the already-imposed, original sentence. At some point thereafter, the defendant may again be paroled.

Therefore, the purposes of a court's parole-revocation hearing—the revocation court's tasks—are to determine whether the parolee violated parole and, if so, whether parole remains a viable means of rehabilitating the defendant and deterring future antisocial conduct, or whether revocation, and thus recommitment, are in order. The Commonwealth must prove the violation by a preponderance of the evidence and, once it does so, the decision to revoke parole is a matter for the court's discretion. In the exercise of that discretion, a conviction for a new crime is a legally sufficient basis to revoke parole.

Following parole revocation and recommitment, the proper issue on appeal is whether the revocation court erred, as a matter of law, in deciding to revoke parole and, therefore, to recommit the defendant to

- 4 -

> confinement. Accordingly, an appeal of a parole revocation is not an appeal of the discretionary aspects of sentence.

***Commonwealth v. Kalichak***, 943 A.2d 285, 290-291 (Pa. Super. 2008) (citations and footnote omitted).

***Commonwealth v. Lapenna***, 317 A.3d 600 (non-precedential decision) (Pa. Super. Ct. filed, March 18, 2024).[13]

The Brief of Appellant appropriately recites the applicable standard of review, the rehabilitative purposes underlying parole, and the requirement that a parole revocation hearing address whether parole remains a viable means of rehabilitation and deferring future antisocial conduct. ***See*** Brief of Appellant, at 12-13. From there, however, the entirety of the argument asking this Court to vacate judgment of sentence revoking Appellant's parole and reinstating the remainder of his underlying VUFA sentence of 11½ to 23 months' incarceration states:

> In the case *sub judice*, parole remained a viable means of rehabilitation and deterring future antisocial conduct of Appellant. Yet, the lower court simply revoked Appellant's parole and resentenced him to serve his back time of 11½ months to 23 months without exploring any other options like drug rehabilitation or other such programs. N.T., 1/18/2024, at 49-50. As such, the lower court erred as a matter of law and abused its discretion.

Brief of Appellant, at 13.

_____

[13] ***See*** Pa.R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to an unpublished non-precedential memorandum decision of ... th[is] Court filed after January 15, 2008. Non-precedential decisions ... may be cited for their persuasive value.").

The record belies this argument, as the lower court reviewed Appellant's persistent scofflaw behavior while out on parole and questioned him at length prior to recommitting him to serve the remainder of his original sentence plus back time. At Appellant's VOP hearing, the lower court acknowledged that prior to Appellant's September 27, 2023, arrest, he had already violated the terms of his parole—and mocked the court's authority and lenity in the process—by failing altogether to attend the three-month vocational program that he had petitioned the court to attend.[14]

Furthermore, sufficient grounds existed to support the lower court's determination that Officer Herrmann supplied credible testimony proving by a preponderance of the evidence that Appellant unlawfully possessed items stolen from the tobacco convenience store, and it reasoned that such testimonial evidence thus established grounds upon which to revoke Appellant's parole. Finally, we observe that the lower court engaged in a lengthy discourse with Appellant at the hearing and exposed the implausibilities with his explanation that he was just walking through the ongoing looting and rioting on his way to his grandmother's home at 1:00 a.m. when he found himself in the wrong place at the wrong time. N.T. at 44-49. We discern no error of law committed by the lower court in its decision to revoke parole and recommit Appellant to serve the remainder of his sentence.

---

[14] The lower court noted, in its frustration with Appellant, "And then, defense had an early parole petition, which I granted – don't ask me why – for some program, which clearly was pointless, because you didn't attend the program." N.T. at 50.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/20/2024</u>